STATE OF LOUISIANA
v.
TERRY CONTRELLE BONDS.
No. 2007 KA 1093.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
WALTER P. REED, District Attorney, KATHRYN LANDRY, Attorneys for State  Appellee.
HOLLI HERRLE-CASTILLO, Attorney for Defendant-Appellant, Terry Contrelle Bonds.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
The defendant, Terry Contrelle Bonds, was charged by bill of information with being a convicted felon in possession of a firearm or carrying a concealed weapon, a violation of La. R.S. 14:95.1.[1] The defendant entered a plea of not guilty. The trial court denied the defendant's motions to suppress. After a trial by jury, the defendant was found guilty as charged. The defendant was sentenced to ten years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, assigning error as to the trial court's denial of the motion to suppress. The defendant also asks this court to review the record for error pursuant to La. C.Cr.P. art. 920(2). For the following reasons, we affirm the conviction and sentence.

FACTS
On March 20, 2006, at approximately 8:45 p.m., several officers of the Washington Parish Sheriff's Office Drug Task Force conducted a "bar check" at Lee's Lounge, located in what was described as a high-crime area in Bogalusa, Louisiana. Detective Brent Goings and Detective Kendall Temples arrived in one unmarked vehicle while Lieutenant Scott Crain and Detective Chris Hickman traveled in a separate unmarked vehicle. When Lieutenant Crain and Detective Hickman pulled up in front of the bar, several individuals were standing outside. There were streetlights near Lee's Lounge, approximately 30-40 feet from where the detectives were. While looking over his shoulder at Lieutenant Crain and Detective Hickman, the defendant started walking away at a very rapid pace. Lieutenant Crain and Detective Hickman were not observing the defendant at that moment.
As the defendant was looking back, he was walking toward Detective Goings's and Detective Temples's unit. Detective Goings exited the unit and identified himself as a police officer. At that time, the defendant turned away and removed his jacket, and Detective Goings observed what appeared to be a handgun falling to the ground. Detective Goings instructed the defendant to stop and the defendant threw his jacket down and fled. Detective Goings alerted Lieutenant Crain and Detective Hickman of the defendant's flight and they pursued and apprehended him.[2] Detective Goings recovered a black .45 caliber, fully loaded handgun from the spot where the defendant discarded it. Detective Temples recovered the defendant's jacket and its contents, including marijuana.

ASSIGNMENT OF ERROR
In the sole assignment of error, the defendant argues that the trial court erred in denying the motion to suppress. The defendant contends that he was not observed while in the commission or imminent commission of a crime. The defendant argues that he was seized for constitutional purposes before he discarded the weapon. The defendant notes that the officers involved were well-known personally or by reputation in the community, and their task force tactics were also well-known, as evidenced by their dubbed name, the "Jump Out Boys." The task force members were clothed in customary task force attire, black outfits with "Sheriff Narcotics" written on them. The defendant further notes that when Detective Goings stepped out of his vehicle and announced himself as the police, an actual stop was imminent and any reasonable person would have realized that they were not free to leave at that point. The defendant concludes that his effort to distance himself from the police, even in a high-crime area, does not rise to reasonable suspicion that the defendant had committed, was committing, or was about to commit a crime, and the evidence should have been suppressed. Finally, the defendant notes that the trial court improperly based its decision, in part, on the fact that Lee's Lounge was predominantly frequented by African Americans.
The Fourth Amendment to the United States Constitution and Article I, Section 5, of the Louisiana Constitution protect persons against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La. C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. See State v. Andrishok, 434 So.2d 389, 391 (La. 1983); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. Andrishok, 434 So.2d at 391. The totality of circumstances must be considered in determining whether reasonable cause exists. State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). An officer's knowledge that a certain area is one of frequent criminal activity is a legitimate, recognized factor, which may be used to judge the reasonableness of a detention. State v. Collins, 93-1198, p. 3 (La. App. 1st Cir. 5/20/94), 637 So.2d 741, 743. Such so-called high-crime areas are places in which the character of the area gives color to conduct, which might not otherwise arouse the suspicion of an officer. State v. Buckley, 426 So.2d 103, 108 (La. 1983).
When law enforcement officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. If, however, property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and, thus, no violation of a person's custodial rights. It is only when the citizen is actually stopped without reasonable cause or when such a stop is imminent that the "right to be left alone" is violated, thereby rendering unlawful any resultant seizure of abandoned property. Belton, 441 So.2d at 1199 (citing Andrishok, 434 So.2d at 391; State v. Chopin, 372 So.2d 1222, 1224 (La. 1979); State v. Ryan, 358 So.2d 1274, 1276 (La. 1978)).
An individual has not been "actually stopped" unless he submits to a police show of authority or he is physically contacted by the police. State v. Tucker, 626 So.2d 707, 712 (La. 1993) (adopting California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). In determining whether an "actual stop" of an individual is "imminent," the focus must be on the degree of certainty that the individual will be "actually stopped" as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an "actual stop" of the individual is "imminent." Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Tucker, 626 So.2d at 712-13.
Detective Goings stated that the defendant was trying to create distance between himself and the officers. The officers described the area as very high in crime and, in particular, illegal-narcotics trafficking. Each officer testified that there was no reason to suspect the defendant initially.[3] Detective Goings stated that he wanted to speak to the defendant after observing his behavior.
The trial court took judicial notice of the fact that the bar was located in a high-crime area before denying the motion to suppress. The trial court mentioned that there had previously been a large number of predominately African-American bars in the high crime area. However, the trial court noted, at the time of the crime, only one bar, Lee's Lounge, was located in this very high drug trafficking area. However, the trial court did not seem to use this as a determining factor. The trial court also noted the defendant's actions in dropping his jacket just after discarding the weapon and in fleeing as Detective Goings instructed him to stop.
Herein, the issue is whether a stop was imminent at the time the defendant threw down the evidence, as he had not been actually stopped. The facts of this case do not suggest that a stop was imminent. This case is not one wherein law enforcement officers swung their patrol car into the defendant's path, switched on the bright lights, and stopped a few feet in front of him. Compare Chopin, 372 So.2d at 1224-25. Nor is this a case where law enforcement officers "sprang" from their patrol car and "overtook" the defendant. Compare State v. Saia, 302 So.2d 869, 873 (La. 1974), cert. denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). The defendant was not surrounded and there was no testimony indicating that the officers approached the defendant with weapons drawn.
To the contrary, the defendant was walking away from officers who did not notice his presence, while walking toward two officers that were observing him. No show of authority or force was employed by the officers such that an actual stop of the defendant was virtually certain to result. Detective Goings and Detective Temples had the right to move closer for a better view of what they considered suspicious activity  the defendant's moving away from Lieutenant Crain and Detective Hickman as he looked back at them over his shoulder. The defendant turned the other way and discarded the handgun when he realized that he was walking toward Detective Goings and Detective Temples. No detention was imminent at the time the defendant abandoned the evidence. Therefore, the evidence was legally seized and the defendant's motion to suppress was properly denied by the trial court. The sole assignment of error is without merit.

REVIEW FOR ERROR
The defendant asks that this court to examine the record for error under La. C.Cr.P. art. 920(2). This court routinely reviews the record for such error, whether such a request is made by a defendant. Under La. C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. Based on our thorough review, we note the following. In sentencing the defendant, the trial court failed to impose the mandatory fine of not less than one thousand and not more than five thousand dollars. See La. R.S. 14:95.1(B). Although the failure to impose the fine is error, it is certainly harmless error since the defendant was not inherently prejudiced in any way by the trial court's failure to impose the fine. Under the general provisions of La. C.Cr.P. art. 882(A), an illegally lenient sentence "may" be corrected at any time by an appellate court on review. Because the trial court's failure to impose the fine was not raised by the State in either the trial court or on appeal, we are not required to take any action. As such, we decline to correct the illegally lenient sentence. See State v. Price, 2005-2514, pp. 21-22 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 124-25 (en banc); State v. Riles, XXXX-XXXX, p. 2 n.3 (La. App. 1st Cir. 2/14/07), 959 So.2d 950, 952 n.3, writ denied, XXXX-XXXX (La. 11/2/07), 966 So.2d 599.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant was also charged with possession of marijuana. The defendant was tried on the convicted felon in possession of a firearm or carrying a concealed weapon charge only.
[2] During the trial, Detective Goings testified that he pursued the defendant for approximately fifty to seventy yards before he was apprehended by Detective Hickman and Lieutenant Crain.
[3] Detective Goings, Detective Temples, and Lieutenant Crain testified at the motion to suppress hearing and at the trial, while Detective Hickman testified at the trial only. The trial testimony presented by the officers was consistent with the testimony presented at the motion to suppress hearing.